Court is next going to call appeal number 18-2612 USA v. Mohammad Khan. And we'll hear first from Mr. Schwartz. Good morning, Your Honor. May it please the court, Daniel Schwartz representing Mr. Khan. This is a case about whether a vague statement portending harm to some unknown person somewhere at some time can be a true threat under the First Amendment. And the Supreme Court made clear in 2003 in Virginia v. Black that it cannot. And I think the court did this in two ways. First, Black provided a definition of true threats. And that definition itself emphasizes particularity, specificity. The court ruled that true threats are those statements where the speaker communicates a, quote, serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. Second, I think Black also provided needed context. Now, Black, of course, involved a Virginia statute which prohibited the burning of crosses done with the intent to intimidate. And the statute also had a prima facie evidence provision, which held that if one burned a cross, one was presumed to have done so with the intent to intimidate. So the Black court was faced with two real questions. One, can a cross burning be a true threat? And second, is this prima facie provision constitutional? Now, with respect to the former question, of course a cross burning can be a true threat. There must have been nothing more terrifying than to leave one's house after one stoked the ire of the KKK and seen a cross burning on a yard, which, of course, is one of the examples in Black. That cross burning was a threat of violence to that particular person. But the court in Black also considered other kinds of cross burnings. In particular, the court considered cross burnings done at a rally. That was also one of the cases that had risen up in Black. And at this rally, at which an individual had at the rally talked about wanting to go off and just take his 30-30 and randomly shoot the Blacks, a cross was burned. And the Supreme Court ruled that cross burnings at rallies are almost certainly constitutional. And we consider what the difference is between those two types of cross burnings. The cross burning at a rally is no less a call of violence. The raison d'etre of the Ku Klux Klan is violence. It's a terrorist organization. But at the rally, it's constitutional. And I think the reason is that a cross burned at a rally doesn't threaten anyone in particular. It doesn't target a person in the same manner that a cross burned on a lawn does. Are you saying Khan had no audience? Well, that's it. So I think that's a separate argument, Your Honor. I end up saying that I don't want to divorce you. I'm just going back here where you're trying to rally versus something that's put out on somebody else's lawn. And you're talking about whatever his comments were on his Facebook. Yes. So with respect to the comments on Facebook, what I'm trying to get at, Your Honor, is that his comments didn't describe a specific target of violence. They didn't describe who was going to be harmed, where that was going to take place, when. The comment was the effect of, I am going to do a bad thing to someone. And what I'm suggesting, Your Honor, is that that type of comment, the I am going to do a bad thing to someone, is akin to a cross burning at a rally, which is effectively a Ku Klux Klan promise. We want to do bad things to people. What about the dry run where he saw a couple of potential people? So I think you're speaking about a statement on his Facebook page that, of course, was not the charge statement. But I don't believe the government argues, either here or argued below, that the charge statement was targeting anyone in particular. Or that when he talks about the dry run in the former statement, it certainly doesn't lend specificity to the person being targeted. So I don't think that those previous statements help us understand a specific target. And I think that's the core question. And that is the central inquiry here. Well, Your Honor, I guess you're focused on a threat. You say there's no real threat. I'm so sorry, Your Honor. Could you repeat the question? Yeah. About what your position is about being no threat. No true threat, within the meaning as defined by the Supreme Court in Virginia v. Black. Does a true threat have to have a specific target? Yes. And where he's saying there were a couple of good prospects on his dry run. That in a previous, he talked about having seen good prospects on a dry run. That is not the charge statement where he's alleged to have threatened anybody. The charge statement he's alleged to have threatened someone is his statement. And I think I have his statement here. His statement, if you keep sending these witnesses around, they're going to see some shit go down. And then he says, I'll literally shoot them as well, and we'll end up with a bigger scenario. There's no specific target. There's no person. There's no entity. There's no group of individuals. And I think here, thinking about other true threat cases that have come before this court and other courts of appeals around the country is helpful. In every single, quote unquote, true threat case considered by the Seventh Circuit, there has been a specific target. It's not hard to determine who is being threatened. And research hasn't revealed, and I don't believe the government has found any other case from any other circuit in which a particular group or individuals or group of individuals is, excuse me, in which a particular person or group of individuals isn't targeted. We've got the May 8th entry talks about there were many potential witnesses because it was a Yes. So we're getting into a who. The question is, how abstract is the who? Your Honor, with respect, I'm not sure we're getting into the who because I don't think there's an allegation that he's saying he was going to be targeting any of these witnesses. There's no argument that these people on the May 8th posts were the ones who were being targeted in the charged post. But yes, again, I would agree. It's tremendously abstract. We don't know. There's no particular person or group of people. My question then will go to of the who, what, where, when, why, how. Sure. Those are the six questions. How many do you think need to be present in the post before it becomes a true threat? Well, Your Honor, I think the who needs to be present. And I think every single case has had at the very least a who. And the who should be particular. Now, as to the what, I would agree that the what should also be present. The when, I think the case law on this, on the when question is a little bit mixed. Certainly in United States v. Parr, the when was somewhat unclear in this case. Although, to be fair, on that case, I'm not sure how much we can rely because the defendant had waived arguments with respect to the First Amendment. So I think at the very least, you need the who and the what. At the very least, yes. I'm trying to go through all of them. So who, what, where, when, and why. At the very least, you need the who. You need the what. Not so sure you need the why. I think the how would be helpful as well. The when has to be before the flight to the next thing. Sure. I mean, sure. I think, okay. Okay. But we don't have a who or a what. I think what we have is a statement of venting, of anger, of saying, I will do bad things. I will do bad things. Um, so I think the second issue also that I was hoping to talk about is one of intent. And that is what kind of intent did the government plead and prove? Now, the intent question goes a bit into how Facebook works. As we know, this statement that was made by, allegedly by my client, was put on a Facebook post. Now, my client had a single Facebook friend. The friend is not alleged to have seen this post or to have been likely to have seen this post. Whereas the post itself was coded public. Now, what does it mean to have a public post? What it means is that it is theoretically available. In the same way of, it does not mean that any of the 2 billion users on Facebook were likely to see it. And I think here it's helpful to argue a little bit by way of metaphor. If I were to enter into the woods, a public place or a forest, and to take a different statute, but I think it could be analogized here, and threaten to shoot the president in the woods. And I make some statement. I think I'm alone. I stand in the woods. I make a statement aloud that that's what I'm going to do. You're saying nobody hears it. Well, I assume that nobody's going to hear it. But a US marshal happens to be perched in a tree and happens to hear what I've said. The question, I think, with respect to the intent, is whether that is enough to demonstrate an intent to threaten. And I don't think it does, because I think that there's kind of a transitive process here that goes with respect to conveyance of the, quote unquote, true threat. You must attempt to convey the threat to somebody. Now, there was never an allegation here that there was anybody to whom the threat was actively being conveyed. No recipient is a term that I think we use in the briefing. No intended recipient. You're well into your rebuttal argument time, you know. Oh, am I? All right. Well, thank you very much, Your Honor. I will reserve the rest of my time for rebuttal, if that's all right. Thank you. Thank you, Mr. Gortz. Ms. Kasterman. May it please the court, Andrea Nikustamnik, on behalf of the United States. The question of whether something is a true threat is one for the jury. And the jury, having been properly instructed, identical to the instructions used in par and approved by this court in par, reasonably found sufficient evidence that this was, in fact, a true threat. Under the Supreme Court and this court's jurisprudence, whether something is a true threat depends on the specific language used and the context in which it was used. So how explicit the threat was, how specific it was as to time, place, manner, victim, the defendant's prior threats. Par says that background and context is highly important to evaluating whether someone expresses a serious intent to do harm to another person and whether the defendant had the capacity to carry it out. And viewed in its totality, the charge threat taken in conjunction with the threats that preceded it was, in fact, a true threat. It was explicit as to the violence that It was explicit as to the gun that he intended to use. It was specific as to time and place. It discussed his plan to find a victim. It stated his motive. It was highly specific as to how he was going to carry it out. The threat in question was this man was an Uber driver. He was looking for victims on the streets of Chicago to shoot and kill. And he talked about it repeatedly on a public Facebook page intending for others to see it. The defendant is simply incorrect that there needs to be a specific victim identified. It certainly would be a relevant factor that whether or not the threat identifies a specific target of the violence. But at no point has this court or the Supreme Court adopted a bright line saying one specific person must be identified. Virginia v. Black is not applicable here. The first paragraph of that opinion makes clear that the court is talking about the Virginia statute governing intimidation. So that statute provided that someone intends to intimidate where there is an intent of intimidating any person or groups of persons. So the entire opinion is about that statutory requirement and what satisfies it. The court did not adopt a constitutional requirement that a true threat target a specific person. And in fact had Congress intended that as to this statute it would have said so. But instead the statute refers to threatening to harm the body of another. And here the intended victim, the intended target of this violence were the bodies of others. They were people that the in his car. And that is sufficient under true threat doctrine for it to have gone to the jury and the jury based on this evidence reasonably found that it was a true threat. The defendant also intended or at least knew that it was a threat. So the defendant repeatedly misstates the standard from Alanis. Alanis does not require intent to threaten somebody else. The Supreme Court held that a person can either intend to threaten another person or they can know that post or that threat would be viewed by a reasonable observer as threatening. So he certainly is correct that to intend to threaten there needs to be an intended audience. However under the second provision of this that he must know it would be a threat if seen by somebody. It does not require an intended audience. The distinction in this case is largely immaterial. However the evidence is very strong that he knew and wanted an audience. So as the defendant notes his Facebook profile was public but not all of it. So his status updates were set to be publicly conveyed but he specifically selected that certain parts of that Facebook profile were private. His location, when people tagged him, all of those were set to only be viewed by his friends which indicates that was a deliberate choice to be making those status posts public. He also talks in some of his prior posts about strapping a GoPro camera onto his head, taping the killings, and then this is his language, uploading the video to Facebook for the whole world to see. It makes very clear that he intends for people, the whole world, to be listening to his threats and that he is intending to in fact threaten. Once he alerts somehow to get focused on him, obviously if he's caught doing something then the investigators will go back in and find out what he wanted to tell the world I guess. It's not going to just happen. Yes your honor, if I understand you correctly you're saying that the law enforcement is looking at the context, seeking out the context of the post? Once they do, but I'm posting to no audience basically. Yes your honor and he certainly is not posting to no audience. So there was testimony at trial that a friend had talked to him about his Facebook post, that a mutual friend had reported that his posts had been disturbing and so the defendant certainly knew that people were watching his Facebook posts. This court in par also addressed that concern. It said that in 875 and 876 these threat statutes are primarily concerned with law enforcement being able to stop violence before it happens and therefore looking at the context of the threat is important not necessarily because the recipient of the threat knows that context but because law enforcement can gauge the context in determining whether the threat is serious. So par says if somebody threatens to blow up a building and they have a history of being a terrorist known to law they actually will blow up the building and the same is true here too. You're right law enforcement went on his profile, they sought out additional information about his threats but that's exactly what par says the purpose of this statute is, is to help law enforcement become informed as to whether something is a true threat. If there are no further questions from the panel the government asks that this court affirm the district court's judgment. Thank you Ms. Castanet, Mr. Schwartz, rebuttal. Thank you Your Honor. A number of issues came up there but I just want to focus on two. One the government mentioned that whether something is a true threat should be a question for the jury and with respect I think that's not entirely right. I think that if a charge statement is not specific enough to qualify pursuant to Virginia. You may disagree with the jury but the jury is the final say in whether or not it is a violation of the law. I don't think well I think Your Honor if a jury is in if a I don't think the jury is the final arbiter to say what under the constitution qualifies as a true threat and then once presented I know but once the court is passed on that oh sure once the court is passed on it I'm what I would like to suggest is that the court had multiple opportunities not to pass on that very question with respect to the indictment it could have dismissed the indictment with respect to the rule 29 motion this question of whether this threat was specific enough to qualify under qualify as a true threat came up and the the court I think erred when it failed to dismiss the case then and so I just want to make clear I think there were other opportunities as well. Second I think that the government's reliance on par is somewhat misplaced here for a couple of reasons. First of course the case is readily distinguishable from this case with respect to the question of specificity. As Your Honor knows par dealt with a threat to blow up the Royce Federal Building. In Milwaukee, Wisconsin. It was known who what the who and the what and the how was was readily articulable there. By comparison here we have again a statement of I will do something bad to someone as yet unknown. Sorry Your Honor I think it was somewhat you know somewhat close to that I will again the language itself is is is I think I would respectfully disagree and say that I think the language itself that's good that's good I appreciate that Your Honor. And and finally I want to address what the government just said with respect to searching for a bright line question. I don't think whatever the bright line is I would disagree that we are in this case very close to it. The the I we're not asking the court to say that the individual being threatened must always be named and address given and statement ultimately clear as to exactly this one person living. There should be a particular person or group of people and all we are asking is for the court to apply the definition of true threats that the Supreme Court gave in black and with respect to that statement about black being from a different statute. I think that is a distinction without a difference Your Honor. Because the black the black court defined true threats in conjunction with that statute in determining whether that statute was in fact constitutional and that meaning that applicability was clear and is not distinguishable merely because there was a different statute at issue and I see I am. I want to just ask one question before you go and that is with the irritation they seem to have because of the investigation was it into this injury that resulted from a car wreck. I think what you're referring to Your Honor is some of the reasons behind the anger for for Mr. Khan. Yeah I think that that that could be right that the car wreck provides some reason for the venting but I don't think that the government argued below or here or can show that the car wreck lends any insight into the specificity question. Only in front of being he whatever harassment he thought would be investigating the cause and whether he injured somebody and I don't know really anything facts about that but that seems to be what he's blurring about when he starts progressing with one month and then two weeks and that sort of thing. And again Your Honor I think the the the car wreck question again I would agree it lends insight into the source of the anger I think that's fair what I don't think is is quite right is whether that car wreck lends insight into the target of the threat because certainly that wasn't something I don't think that the government argued below or argues here that that he was targeting this person with his. Facebook post that he was targeting the person that just seems to me I see what I see that he's irritated because he's being investigated and people asking him questions and whether I assume it's a process that's going on as a result of the car wreck and an injury to somebody. Anyway that's I don't want to take you any further because that's my own intuition as opposed to what's really the issue. What you were appointed yes yes you have the thanks of the court as well as Mr. Borchardt and Mr. Hartman and you're from thank you very much thank you thank you Miss Castanet. Case will be taken under advisement.